UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARK S. SOLKOLSKY, | ) | 1:07-cv-00613-OWW-SMS-PC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING MOTION FOR |
| | ) | RECONSIDERATION |
| vs. | ) | (Doc. 11) |
| | ) | |
| W. T. VOSS, et al., | ) | ORDER VACATING ORDER ISSUED |
| | ) | ON FEBRUARY 7, 2008 |
| | ) | (Doc. 9) |
| Defendants. | ) | |
| | ) | ORDER DISMISSING AMENDED |
| | ) | COMPLAINT, WITH LEAVE TO |
| | ) | AMEND |
| | ) | (Doc. 4) |
| | ) | |
| | ) | ORDER FOR CLERK TO SEND §1983 |
| | ) | COMPLAINT FORM TO PLAINTIFF |
| | ) | |
| | ) | THIRTY DAY DEADLINE TO FILE |
| | ) | SECOND AMENDED COMPLAINT |

Plaintiff, Mark S. Solkolsky ("plaintiff") is a civil detainee proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.[1] Now pending is plaintiff's motion for reconsideration, filed on February 26, 2008. (Doc. 11.)

**I.    RELEVANT PROCEDURAL HISTORY**

Plaintiff filed the complaint that commenced this action on April 23, 2007. (Doc. 1)  On May 8, 2007, plaintiff filed an amended complaint upon which this action now proceeds. (Doc. 4.) On May

---

[1] Individuals detained pursuant to California Welfare and Institutions Code § 6600 et seq. are civil detainees and are not prisoners within the meaning of the Prison Litigation Reform Act. Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000).

1

31, 2007, the court granted plaintiff's motion to proceed in forma pauperis. (Doc. 5.) On July 11, 2007, plaintiff's case was reassigned from District Judge Oliver W. Wanger to District Judge Arthur L. Alarcon. (Doc. 7.) The court screened plaintiff's amended complaint and issued an order on February 7, 2008, dismissing the amended complaint for failure to state a claim, with leave to amend within thirty five days. (Doc. 9.) On February 13, 2008, plaintiff's case was reassigned from District Judge Arthur L. Alarcon to District Judge Oliver W. Wanger and Magistrate Judge Sandra M. Snyder. (Doc. 10.) On February 26, 2008, plaintiff filed a motion for reconsideration of the February 7, 2008 order which dismissed his amended complaint with leave to amend. (Doc. 11.)

## II.    SCREENING REQUIREMENT

Pursuant to 28 U.S.C. § 1915(e)(2), the court must conduct an initial review of the complaint for sufficiency to state a claim. The court must dismiss a complaint or portion thereof if it determines that the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). If the court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment.

## III.   SUMMARY OF AMENDED COMPLAINT

Plaintiff is currently a civil detainee at Coalinga State Hospital ("CSH"). The events at issue in the amended complaint allegedly occurred on April 11, 2007, when plaintiff was transported from CSH to French Hospital in San Luis Obispo, for a medical procedure, and then returned back to CSH. Plaintiff names as defendants W.T. Voss (Former Executive Director of CSH), Peter Bresler, M.D. (Medical Director of CSH), and unspecified Does 1 through 5, inclusive.

Plaintiff alleges that sometime in March 2007, defendant Bresler caused a medical appointment to be made for him at the "Nuclear Medicine" section of French Hospital, located in the city of San Luis Obispo, California. (Amd Cmp at 3 ¶10.) Plaintiff, who is handicapped and wheelchair bound, alleges that on April 11, 2007, he was called out of his quarters for the appointment, without notice, and was taken to the "Discharge" section of CSH, where he was placed in the custody of armed prison guards, Officers A. Galindo and A Walton. <u>Id</u>. at ¶11. Plaintiff alleges that defendant Voss caused his former

1    CDC [prison-identification] number to be re-activated for the purpose of relinquishing custody of him
2    to the California Department of Corrections and Rehabilitation ("CDCR").  Id. at ¶ 12.

3         Plaintiff alleges he was ordered by prison guards to remove his hospital clothing and wear a
4    CDCR white jumpsuit.  Id. at 4 ¶ 14.  Plaintiff further alleges his hands were shackled to his side, his legs
5    were shackled, and he was returned to his wheelchair.  Id.  Plaintiff alleges he was taken by prison
6    guards in a wheelchair-accessible van to French Hospital in San Luis Obispo, leaving CSH at
7    approximately 9:15 a.m. and arriving at French Hospital at approximately 11:59 a.m.  Id. at ¶ 15.
8    Plaintiff alleges he was taken into the hospital by a side door, still shackled hand-and-foot, to the Nuclear
9    Medicine waiting area.  Id. at ¶ 16.

10       Plaintiff alleges that while he was waiting to be seen by the technician, another patient struck up
11   a conversation with Officer Galindo, who explained to the other patient who plaintiff is, that he is a State
12   hospital patient, and why plaintiff was at the hospital.  Id. at ¶ 17.  Plaintiff maintains that the
13   information Officer Galindo shared with the other patient was confidential and should not have been
14   disclosed.  Id. fn 3.  Plaintiff alleges that he was told to swallow a pill containing radioactive iodine and
15   wait for four hours; then he was returned to the wheelchair-accessible van to wait.  Id. at ¶ 18.

16       Plaintiff alleges that at approximately 12:30 p.m., the aforementioned prison guards were
17   relieved by armed prison guards A. Otto and A. Comaites.  Id. at ¶ 19.  Plaintiff alleges that for the next
18   four and a half hours, he was forced to endure loud hard rock music by such recording artists as Marilyn
19   Manson, Nine Inch Nails, and Trent Reznor.  Id. at ¶ 20.  Plaintiff alleges that the prison guards did not
20   provide him with any food or offer him any food during this time.  Id. at ¶ 21.

21       Plaintiff alleges that at approximately 4:00 p.m., he was again taken to the Nuclear Medicine
22   section of the hospital for medical scanning.  Id. at 5 ¶ 22.  Plaintiff alleges he was then returned to CSH,
23   arriving at approximately 8:00 p.m., where he was surrendered into the custody of defendant Voss.  Id.
24   at ¶ 23.  Plaintiff maintains that of the five California State hospitals,[2] only Coalinga State Hospital
25   ///

26   ----
27   [2]The five California State hospitals named by plaintiff include Napa State Hospital, Atascadero State Hospital, Metropolitan State Hospital, Patton State Hospital, and Coalinga State Hospital.

28                                                    3

surrenders its patients to armed CDCR prison guards and does not use its own hospital police force to transport patients to outside medical appointments. Id. at ¶ 24.

Plaintiff claims injuries of physical abuse and emotional distress. Plaintiff requests as relief compensatory damages, punitive damages, and attorneys fees and costs.

**IV.     MOTION FOR RECONSIDERATION**

Plaintiff has filed a motion for reconsideration of the court's previous screening order of February 7, 2008. (Doc. 11.) Plaintiff argues that the court erred in its analysis and should have relied on a standard of review reflecting plaintiff's status as a civil detainee and not as a prisoner.

### A.     Civil Detainee Status

Individuals detained pursuant to California Welfare and Institutions Code § 6600 et seq. are civil detainees and are not prisoners within the meaning of the Prison Litigation Reform Act. Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000).

Plaintiff argues that as a civil detainee, he is subject to laws which apply to civilly committed persons, not to criminal prisoners. Plaintiff requests reconsideration of the court's screening order of February 2, 2008, "on the grounds that the Order is founded on the mistaken premise that plaintiff is a prisoner of the State of California." Id. at 1:23-24.

The court has thoroughly reviewed the order of February 7, 2008 and finds that the analysis relied, in part, on law inapplicable to a civil detainee proceeding under § 1983. Therefore, plaintiff's motion for reconsideration shall be granted and the court's order of February 7, 2008, shall be vacated. In light of this ruling, the court here addresses plaintiff's claims in the second amended complaint anew.

**V.     PLAINTIFF'S CLAIMS**

Plaintiff alleges in the second amended complaint that defendants violated his constitutional rights to due process and subjected him to cruel and unusual punishment by surrendering him to the custody of the CDCR without notice, failing to adequately feed him, and subjecting him to loud hard rock music for hours on end.

///

///

4

**A.     Legal Standard**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

**B.     Linkage Requirement**

Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44).

Plaintiff fails to allege sufficient facts linking any of the named defendants with an affirmative act or omission resulting in the deprivation of constitutional rights by plaintiff.

**C.     Supervisory Liability**

Plaintiff alleges that defendant Peter Bresler, M.D., Medical Director of CSHospital, "caused a medical appointment to be made for plaintiff." (Amd Cmp at 2 ¶ 6, 3 ¶10.) Plaintiff also alleges that

///

defendant Voss, Executive Director of CSH, "caused" his former CDC [prison-identification] number "to be re-activated." Id. at ¶ 12.

To the extent that plaintiff alleges defendants are responsible for the actions of employees under their supervision, there is generally no liability for supervisory personnel under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Plaintiff has not alleged sufficient facts indicating that defendants personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen, 885 F.2d at 646. Therefore, plaintiff fails to state a claim upon which relief can be granted under § 1983 against any of the defendants based on supervisory liability.

The court will provide plaintiff with the opportunity to file a second amended complaint curing the deficiencies identified by the court in this order. The court will provide plaintiff with the law that may or may not be relevant to the claims he is attempting to assert.

///

///

**D.     Due Process**

      **1.     Procedural Due Process**

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving any person of life, liberty, or property, without due process of law. In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Due process also mandates some form of notice and hearing in order to deprive person of property interest that is more than de minimis. Stone v. Godbehere, 894 F.2d 1131 (9th Cir. 1990); Fuentes v. Shevin, 407 U.S. 67, 90 n. 21, 92 (1972).

      **2.     Substantive Due Process**

[T]he more protective fourteenth amendment standard applies to conditions of confinement when detainees ... have not been convicted" of a crime. Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir.1987) (citing Youngberg v. Romeo, 457 U.S. 307 (1982) (civilly committed individuals), and Bell v. Wolfish, 441 U.S. 520 (1979) (pretrial detainees)). The Fourteenth Amendment requires the government to do more than provide the "minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981), for non-convicted detainees. Rather, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972).

"To establish a violation of substantive due process . . . , a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), *cert. denied*, 117 S. Ct. 1845 (1997); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998).

///

In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society." Poe v. Ullman, 367 U.S. 497, 542 (1961) (Harlan, J., dissenting). In seeking this balance, the Supreme Court has weighed the individual's interest in liberty against the State's asserted reasons for restraining individual liberty. Youngberg, 457 U.S. at 321.

### E. Civil Detainee Conditions of Confinement

Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "[T]he State [has] a duty to provide adequate food, shelter, clothing, and medical care. These are the essentials of the care that the State must provide. The State also has the unquestioned duty to provide reasonable safety for all residents and personnel within the institution. And it may not restrain residents except when and to the extent professional judgment deems this necessary to assure such safety or to provide needed training." Youngberg, 457 U.S. at 324.

The Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, Bell, 441 U.S. at 536, within the bounds of professional discretion. Youngberg, 457 U.S. at 321-22. Moreover, "due process requires that the conditions and duration of confinement [for civilly confined SVPs] bear some reasonable relation to the purpose for which persons are committed." Seling v. Young, 531 U.S. at 250, 265 (2001); see also Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004). While the nature of an SVP's confinement may factor in this balance of what is reasonable, it is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs. See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir.2001) (applying the Fourteenth Amendment's "objective reasonableness" standard to excessive force claims brought by civilly committed SVPs). "[C]ivil detainees retain greater liberty protections than individuals detained under criminal process, and pre-adjudication detainees retain greater liberty protections than convicted ones . . . ." Jones, 393 F.3d at 932 (citations omitted). Treatment is presumptively punitive when a civil detainee is confined in conditions identical to, similar to, or more restrictive than his

///

criminal counterparts, and when a pre-adjudication civil detainee is detained under conditions more restrictive than a post-adjudication civil detainee would face. Id. at 932-33.

### F.	Right to Privacy

It is clearly established that the Fourteenth Amendment protects a sphere of privacy. See Grummett v. Rushen, 779 F.2d 491, 494 (9th Cir.1985). While the circumstances of institutional life demand that privacy be limited, it is clearly established that gratuitous invasions of privacy violate the Fourteenth Amendment. Id.

## VI.	CONCLUSION AND ORDER

Plaintiff's amended complaint fails to state a claim upon which relief may be granted under § 1983 because plaintiff has not adequately linked the alleged constitutional violation to actions or omissions of named defendants. The court will provide plaintiff with the opportunity to file a second amended complaint curing the deficiencies identified by the court in this order.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo, 423 U.S. at 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff is advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." Id. (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. The amended complaint should be clearly and boldly titled "SECOND AMENDED COMPLAINT," refer to case number 1:07-cv-00613-OWW-SMS-PC, and be an original signed under penalty of perjury.

Accordingly, based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's motion for reconsideration is GRANTED;
2. The court's order of February 7, 2008, is VACATED;
3. Plaintiff's amended complaint is dismissed for failure to state a claim, with leave to amend;
4. The Clerk's Office shall send plaintiff a § 1983 civil rights complaint form;
5. Plaintiff is granted **thirty (30) days** from the date of service of this order in which to file a second amended complaint;
6. Plaintiff shall caption the second amended complaint "Second Amended Complaint" and refer to the case number 1:07-cv-00613-OWW-SMS-PC; and
7. If plaintiff fails to file a second amended complaint in compliance with this order, the court will recommend that this action be dismissed for failure to state a claim.

IT IS SO ORDERED.

**Dated:   April 3, 2008**                            /s/ Sandra M. Snyder
                                                    UNITED STATES MAGISTRATE JUDGE